UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| JOHN M. MILLAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:11-CV-00438-NT |
| | ) | |
| STATE OF MAINE, | ) | |
| DEPARTMENT OF LABOR, | ) | |
| BUREAU OF REHABILITATION, | ) | |
| DIVISION FOR THE BLIND | ) | |
| AND VISUALLY IMPAIRED, | ) | |
| | ) | |
| Defendant | ) | |

### RECOMMENDED DECISION

Plaintiff John Millay brings this civil action against Defendant Maine Department of Labor, Bureau of Rehabilitation, alleging that its Division for the Blind and Visually Impaired discriminated against him by, among other things, denying certain rehabilitation services to support his participation in the Penobscot Job Corps culinary arts vocational program. Defendant has responded with a motion to dismiss. The Court referred the motion for report and recommendation. I now recommend that the Court grant the motion to dismiss as to all of the counts asserted in Plaintiff's complaint.

### THE PLEADINGS

Plaintiff's allegations state that he is blind and suffers from post-traumatic stress disorder due to significant traumatic life events related to his disability of blindness. During his early childhood in another country, Plaintiff was kidnapped, intentionally blinded, and forced to beg in the street. Eventually, he came to live at an orphanage, where he remained until age twelve.

Plaintiff alleges both physical and mental disabilities that qualify him for services provided by Defendant.  (Compl. ¶¶ 12, 17, Elec. Case File No. 1.)  Plaintiff alleges that, following his high school graduation, Defendant "failed to provide him with essential, federally mandated accommodations to assist him to participate in job training programs toward future employment."  (Id. ¶ 18.)

Plaintiff enrolled in the Job Corps program after attending the University of Maine during the 2007-2008 and 2008-2009 school years.  Plaintiff alleges that Defendant failed to assist him in his effort to succeed at the University.  (Id. ¶ 19.)  In fall 2009, Defendant offered to assist Plaintiff to participate in programming administered directly by Defendant (described as the Business Enterprise Program), but allegedly the director of the program subsequently closed the program to new participants.  (Id. ¶¶ 20-21.)

In January 2010, Defendant assisted Plaintiff to enroll in the Penobscot Job Corps culinary arts vocational program, a federally funded program in Bangor, Maine.  (Id. ¶ 22.)  According to Plaintiff, his enrollment was delayed for more than a year because Defendant did not timely arrange for blindness-related safety accommodations.  (Id. ¶ 23.)  Plaintiff purchased, on his own, "some accommodations, including a computer with accessible software, essential for a blind student to participate in the academic part of the program," whereas "Defendant provided one orientation and mobility session, promised further assistance, and failed to do so or to return further telephone calls from Penobscot Job Corps personnel."  (Id. ¶ 24.)

Plaintiff resides a distance of 46 miles from the Job Corps campus.  (Id. ¶ 28.)  Plaintiff alleges that his disabilities prevent him from participating in the Job Corps program as a residential student due to safety concerns.  (Pl.'s Response to Def.'s Mot. at 4, ECF No. 10.)  Job

Corps personnel offered a "standard transportation reimbursement for up to 27 miles round trip daily." (Compl. ¶ 27.) Per the complaint:

> Plaintiff stated that he would require transportation 46 miles each way and reimbursement for a driver, since no public transportation was available. When Defendant failed to assist, the Maine Disability Rights Center[1], on behalf of Plaintiff, requested this accommodation of Defendant. In reply, Defendant began to insist that Plaintiff reside on campus, which cost would be borne by the Job Corps Program.

(Id. ¶ 28.) Plaintiff alleges that his participation was delayed because of these transportation issues and that his family's vehicle, "overtaxed by the four hours' daily drive, is no longer fit to transport him so that he lacks transportation to continue in the program." (Id. ¶¶ 29, 34.)

Plaintiff complains that Defendant failed to produce "his file," told him that his disabilities "did not qualify him for accommodations," and failed to provide for safety accommodations in the Job Corps kitchen, resulting in injury, a trip to the emergency room, a period of "medical leave," and a need to purchase his own safety equipment. (Id. ¶¶ 30-33.) Plaintiff further alleges that he is in good standing in the Job Corps program, has received above average ratings in all areas, and has faithfully attended and materially participated in all trainings, meetings, and activities. (Id. ¶ 35.) However, "[d]ue to the loss of transportation and to his preventable injury, Plaintiff's progress in his employment training program has been interrupted, despite his extraordinary effort to participate." (Id. ¶ 36; see also ¶ 44 (lost wages).) Plaintiff also complains that he needed to incur expenses of more than $11,000 due to discrimination. (Id. ¶ 40.) In addition to these harms, Plaintiff complains of "physical injury, loss of self-esteem, injury to future employment, emotional distress, pain and suffering, and other pecuniary and non-pecuniary losses." (Id. ¶ 41.)

---

[1]     The Maine Disability Rights Center is a private, "non-profit" entity, not a state agency.

Plaintiff alleges that Defendant discriminated against him knowingly and willfully, with malice or reckless indifference to his rights.  (Id. ¶¶ 42-43.)  On the nature of the injunctive relief he requires, Plaintiff alleges:

> Plaintiff has no remedy to fully redress the wrongs alleged, and he will continue to suffer irreparable injury from his treatment by Defendant unless Defendant is enjoined by this Court to pay costs of Plaintiff's travel to employment training, and to provide the accommodations for safety required by Plaintiff's disabilities, including orientation and mobility training, adaptive site assessment and modifications, safety training, and safety and accessibility equipment required by Plaintiff for completion of the culinary arts training program in which he is enrolled.

(Id. ¶ 45.)  Plaintiff recites three counts, one for each of the following statutes:  the Maine Human Rights Act, the Americans with Disabilities Act, and the Rehabilitation Act.  (Id. ¶¶ 46-54.)  In addition to injunctive and declaratory relief, Plaintiff seeks money damages and unspecified "equitable relief for intentional infliction of emotional distress."  (Id. ¶ 55.)

### SUPPLEMENTAL FACTS RELATED TO THE ADMINISTRATIVE DECISION

Defendant has attached to its motion the administrative decision rendered by a Maine Department of Health and Human Services hearing officer.  (Admin. Hr'g Dec., ECF No. 7-2.) The issue identified in that decision was described as follows:

> At issue at hearing is whether the Department of Labor's Division of the Blind and Visually Impaired denial of daily commuting costs from John Millay's home in Surry, Maine to the Job Corps Center Bangor, Maine was correct.

(Id., PageID #: 71.)  The hearing officer's ultimate finding was the following:

> The Department of Labor's Division of the Blind and Visually Impaired denial of daily commuting costs from John Millay's home in Surry, Maine to the Job Corps Center Bangor, Maine was in accordance with their rules.  That decision is, therefore, affirmed.

(Id. at 74.)  The rule in question is a rule allowing for support services to include:

> Transportation, including travel and related expenses that are necessary to enable an applicant or eligible individual to participate in a vocational rehabilitation

4

service and achieve an employment outcome by the most cost-effective means possible.

(Id.)  In support of this administrative determination, the hearing officer found that Plaintiff's disabilities did not prevent him from residing on the Job Corps campus, notwithstanding his assertion that it was not a safe place for him to reside.  According to the hearing officer, the experience would likely benefit Plaintiff academically and personally.  (Id.)  The hearing officer's concluding assessment was:

> In summary, a Decision in this matter must be based solely on the governing rules.  Those rules are clear in that in order for the Division to pay transportation costs for Mr. Millay it must be necessary for him to incur travel expenses to complete his Job Corps training.  That simply is not the case here.  While he has the right to commute, and his reasons for choosing to commute are understood, Mr. Millay can complete his Job Corps training by living on campus at no additional cost to the Division.

(Id. at 75.)

In addition to the administrative decision, the parties have presented the Court with the following additional exhibits:  the docket sheet from the Rule 80C appeal, John Millay's petition for review, and Millay's motion for voluntary dismissal (ECF No. 7, Exs. 1-3);  a Job Corps evaluation, a Job Corps medical separation with reinstatement plan, a letter to the DBVI Director signed by John Millay, a letter from Dr. Gaffney to the DBVI Director, and a request for 12 subpoenas (ECF No. 10, Exs. 1-5);  and a certification of the record from the Rule 80C hearing (ECF No. 11, Ex. 1).

### DISMISSAL STANDARDS

Rule 12 of the Federal Rules of Civil Procedure provides that a complaint can be dismissed for, among other things, "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To state a claim, a plaintiff must set forth (1) "a short and plain statement of the grounds for the court's jurisdiction";  (2) "a short and plain statement of the

claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought." Fed. R. Civ. P. 8(a). In deciding a motion to dismiss, the Court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a claim for recovery that is "plausible on its face." Eldredge v. Town of Falmouth, 662 F.3d 100, 104 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). "A claim is facially plausible if supported by 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 129 S. Ct. at 1949). A plaintiff's complaint need not provide an exhaustive factual account, only "a short and plain statement." However, the allegations must be sufficient to identify the manner by which the defendant subjected the plaintiff to harm and the harm alleged must be one for which the law affords a remedy. Iqbal, 129 S. Ct. at 1949.

A complaint is also subject to summary dismissal based on a plaintiff's failure to demonstrate that the Court has jurisdiction over the subject matter of the case. Fed. R. Civ. P. 12(b)(1). If the plaintiff's pleading is challenged on this ground, the plaintiff bears the burden of demonstrating that subject matter jurisdiction exists. The Court may consider evidence outside of the pleadings to determine the jurisdictional question, without converting the motion to a motion for summary judgment. Aversa v. United States, 99 F.3d 1200, 1209-10 (1st Cir. 1996). The Court should endeavor to resolve challenges to its exercise of jurisdiction before addressing the merits. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998); Donahue v. City of Boston, 304 F.3d 110, 117 (1st Cir. 2002).

**DISCUSSION**

Defendant argues that Plaintiff's action should be dismissed both for lack of subject matter jurisdiction and for failure to state a claim.  Defendant raises claim preclusion, a statute of limitation, pleading deficiencies, failure to exhaust administrative remedies, Eleventh Amendment immunity, and <u>Burford</u> abstention.  (Mot. to Dismiss, ECF No. 7.)  These concerns will be addressed in turn.  Before they are addressed, however, the dispute calls for a statutory preface to help explain why Defendant's motion to dismiss has merit.

**A.     The Rehabilitation Act and State Vocational Rehabilitation Services**

Plaintiff is a participant in a federally funded vocational rehabilitation program.  Pursuant to the Rehabilitation Act, federal funding is directed to the Maine Department of Labor to support a vocational rehabilitation program that services individuals with disabilities.  <u>See</u> 29 U.S.C. §§ 701-704, 705(5), 720(b), 721.  While another provision in the Rehabilitation Act, 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, prohibit the exclusion of disabled persons from participating in or receiving the benefit of services, programs, or activities that are offered by a public entity or are supported by federal funding, which are otherwise available to non-disabled persons, the vocational rehabilitation services that are at issue in this action are specifically directed to disabled individuals and not the general public.  29 U.S.C. § 720(a), 721.  Pursuant to the statutory scheme set up in the Rehabilitation Act, only disabled individuals are eligible for assistance under the rehabilitation program, <u>id.</u> § 722(a), and eligible individuals are assisted through means of an "individualized plan for employment," <u>id.</u> § 722(b).

Disputes over program eligibility and the services afforded in an individualized plan for employment are subject to specific dispute resolution procedures.  <u>Id.</u> § 722(c).  These entail

7

"procedures for mediation of, and procedures for review through an impartial due process hearing of, determinations made by personnel of the designated State unit that affect the provision of vocational rehabilitation services to applicants or eligible individuals."  Id. Additionally, the Rehabilitation Act affords a right to a civil action to "any party aggrieved by a final decision," which "may be brought in any State court of competent jurisdiction or in a district court of the United States of competent jurisdiction without regard to the amount in controversy."  Id. § 722(c)(5)(J)(i).  In such an action the court:

> (I)  shall receive the records relating to the hearing under subparagraph (A) and the records relating to the State review under subparagraphs (D) through (F), if applicable;
>
> (II)  shall hear additional evidence at the request of a party to the action;  and
>
> (III)  basing the decision of the court on the preponderance of the evidence, shall grant such relief as the court determines to be appropriate.

Id. § 722(c)(5)(J)(ii).  Pending court review, the final administrative decision "shall be implemented."  Id. § 722(c)(5)(I).

**B.    Plaintiff's Claims in Relation to Vocational Rehabilitation Services**

Rather than advancing his claim pursuant to Section 722(c)(5)(J) of the Rehabilitation Act, Plaintiff brings suit under Title II of the ADA, 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, alleging that the Maine Department of Labor, through its Division for the Blind and Visually Impaired, subjected him to "discrimination" because it has not provided to him certain services he requested.  (Compl. ¶¶ 38, 39, 42, 43.)  Rather than pursuing "appropriate relief" under the statutory procedural scheme described in the preceding section of this discussion, Plaintiff seeks a jury trial on claims of discrimination based on decisions made by Defendant in the context of a rehabilitation program that serves only disabled

individuals.  For reasons that follow, Plaintiff's approach justifies Defendant's motion to dismiss.

## C.      Defendant's Motion

Defendant's primary argument is that federal litigation over the merits of this action is precluded because, after Plaintiff's due process hearing, Plaintiff filed a petition for state court review of agency action pursuant to Rule 80C of the Maine Rules of Civil Procedure and then voluntarily dismissed that court proceeding before filing the instant civil action in federal court.[2] (Mot. at 6, 9-10.)  In particular, Defendant objects to relitigation of the factual issue of whether Plaintiff needed to commute or could, instead, have resided on campus.  (Id. at 8.)  Additionally, Defendant maintains that related claims over the alleged denial of other rehabilitation services are equally barred because they could have been raised in the administrative venue, but were not. (Id. at 9.)  Defendant advances these arguments in relation to the doctrine of *res judicata*.  For reasons that follow, Section 722 calls for the dismissal of certain of Plaintiff's claims, although it is not because of the *res judicata* doctrine, but rather due to a failure to exhaust.  Defendant's motion also asserts the defenses of failure to exhaust administrative remedies and failure to state a claim.  (Id. at 10-11.)  These arguments are sound and are far more straight-forward approaches to the question of whether Plaintiff's suit against Defendant is proper.  Ultimately, I recommend a decision finding:

> (1) that in the context of disputes over rehabilitation services, the Rehabilitation Act calls for administrative exhaustion and a civil action under Section 722(c);

> (2) that the only claim concerning rehabilitation services that Plaintiff exhausted is the claim over the commuter subsidy;

---

[2]      Pursuant to Maine law, a party to an administrative proceeding may appeal any final agency action to the Maine Superior Court, which will review the decision for abuse of discretion, errors of law, or findings not supported by the evidence.  5 M.R.S. § 11002;  Me. R. Civ. P. 80C.  A claim advanced under Section 722(c)(5)(J) would not be subject to Rule 80C review because the Rehabilitation Act expressly affords a different procedure.

(3) that the claim over the commuter subsidy remains ripe for review but will be barred by the doctrine of *res judicata* if Plaintiff does not obtain leave to amend his complaint to assert it in this action;

(4) that, to the extent Plaintiff's complaint includes claims of discrimination, writ large, beyond the particularized disputes over specific vocational rehabilitation services, Plaintiff fails to state a claim because the allegations are insufficient to support a plausible inference of intentional discrimination and do not describe exclusion from, or denial of the benefit of, services, programs, or activities open to the general public, given that Defendant's vocational rehabilitation program only services disabled persons.

However the Court resolves the foregoing dispositive issues, a question will remain whether the Eleventh Amendment calls for dismissal of Plaintiff's claims under the Americans with Disabilities Act and the Maine Human Rights Act.  In my view, the Eleventh Amendment bars counts I (MHRA) and II (ADA)from proceeding in this Court and they should be dismissed based on this threshold, jurisdictional obstacle.  Lastly, Defendant raises an abstention doctrine.  That final argument is unpersuasive.

### 1.     *The preclusive effect of state administrative proceedings*

"Federal common law generally requires that federal courts accord the decisions of state administrative agencies acting in a judicial capacity 'the same preclusive effect to which it would be entitled in the State's courts.'"  Ugurhan Akturk Kosereis v. Rhode Island, 331 F.3d 207, 212 (1st Cir. 2003) (quoting Univ. of Tenn. v. Elliott, 478 U.S. 788, 799 (1986)).  Nevertheless, unlike the judgments of state courts, which are entitled "the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State," 28 U.S.C. § 1738, state administrative decisions will not obtain preclusive force in relation to federal statutory rights unless "preclusion would be consistent with Congress' intent in enacting [the statute in question.]"  Elliot, 478 U.S. at 796.

In University of Tennessee v. Elliot, the Supreme Court held that it was proper for a district court to give preclusive effect to an administrative determination insofar as the plaintiff's civil rights claims were concerned, but not insofar as the plaintiff's Title VII employment discrimination claim was concerned.  This result flowed from the fact that Congress, "in enacting the Reconstruction civil rights statutes, did not intend to create an exception to general rules of preclusion," id. at 797, whereas certain language in Title VII "would make little sense . . . if state agency findings were entitled to preclusive effect in Title VII actions in federal court," id. at 795 (identifying 42 U.S.C. § 2000e-5(b) and its provision for EEOC review of state agency findings and also citing Chandler v. Roudebush, 425 U.S. 840, 848 (1976), describing the "*de novo*" character of Title VII actions).

Since its opinion in Elliott, the Supreme Court has held that administrative decisions do not receive preclusive effect in actions brought under the Age Discrimination in Employment Act, because that statute's filing requirements "plainly assume the possibility of federal consideration after state agencies have finished theirs."  Astoria Fed. Sav. and Loan Assoc. v. Solimino, 501 U.S. 104, 111 (1991) (citing 29 U.S.C. §§ 626(d), 633(b)).  "It is now settled . . . that state agency findings that are not reviewed by a state court are not entitled to any preclusive effect in a subsequent action under Title VII or the Age Discrimination in Employment Act of 1967."  Thomas v. Contoocook Valley Sch. Dist., 150 F.3d 31, 39 (1st Cir. 1998) (citations omitted).

The question presented by Defendant's motion is whether Plaintiff's claims concerning vocational rehabilitation services arise from a statutory scheme that allows the Court to infer congressional intent to deny preclusive effect to state administrative decisions.  It is clear from the language of Section 722(c)(5)(J) of the Rehabilitation Act that administrative decisions

11

related to disputes over rehabilitation services may be challenged in either state or federal court, without pursuing a Rule 80C "appeal" or "petition for judicial review" in state court. Obviously, the civil action provision in Section 722 reflects Congress's intention to allow for direct federal court review of administrative decisions made under that section. However, Plaintiff has not advanced a claim under Section 722(c)(5)(J). Instead, Plaintiff has brought different claims despite, or notwithstanding, the administrative proceedings. This choice is what necessitates a more drawn out discussion concerning the potential preclusive effect of the as-yet unreviewed administrative decision.

Plaintiff's allegations are that Defendant has discriminated against him by virtue of failing to provide vocational rehabilitation services to accommodate his participation in a federally funded vocational program. In his view, he has been excluded from participating in a federally funded program. Such claims are available under Title II of the ADA and Section 504 of the Rehabilitation Act, but they are subject to the "remedies, procedures, and rights" found in Title VI of the Civil Rights Act of 1964. See 29 U.S.C. § 794a(a)(2); 42 U.S.C. § 12133. Unlike Title VII, Title VI does not include a requirement that claimants exhaust administrative remedies before bringing a civil action. It is this absence of an exhaustion requirement that makes these claims analogous to the section 1983 claims barred on *res judicata* grounds in Elliott. By pursuing administrative relief, and then allowing the administrative decision to go unreviewed, Plaintiff hazards a *res judicata* bar to what is now, in essence, a collateral civil action. See Dertz v. City of Chicago, No. 94 C 542, 1997 U.S. Dist. Lexis 1956, *30, 1997 WL 85169, *10 (N.D. Ill. Feb. 24, 1997) (observing that Title II of the ADA and the Rehabilitation Act do not require exhaustion of administrative remedies, which "indicates a Congressional

intent that the doctrine of issue preclusion may apply to subsequent claims under these provisions").

If Plaintiff had simply alleged a civil action under 722(c), and commenced the action in a timely fashion, all of this confusion would not have arisen.  Because he decided, instead, to allow the administrative decision to go unreviewed and to bring discrimination claims under different statutory provisions, the logical result of an <u>Elliott</u> analysis is that the unreviewed administrative decision warrants *res judicata* analysis.

The fulcrum on which the *res judicata* issue turns is a statute of limitation defense.  If Plaintiff still has an opportunity to obtain judicial review of the administrative decision by amending his complaint to assert a claim under Section 722(c)(5)(J), then it would be illogical to say that the administrative decision is entitled to preclusive effect while it is still subject to review.  Plaintiff could amend his complaint to include the Section 722 claim, provided he requests leave to amend and the Court grants that request.  On the other hand, if the administrative decision can no longer be reviewed under Section 722(c)(5)(J), then it truly has become a final decision entitled to whatever preclusive effect Maine law would assign to it.

Defendant maintains that the Section 722(c)(5)(J) claim has expired because it was subject to a 30-day limitation period.  (Mot. at 5.)  At this juncture, based on the available legal argument advanced by Defendant, I disagree.  The Rehabilitation Act does not prescribe a statute of limitation.  Ordinarily, this would mean that the Court must borrow a limitation period from the most analogous state law, provided that the limitation period of choice does not upset federal law or policy.  <u>Nieves-Marquez v. Puerto Rico</u>, 353 F.3d 108, 118 (1st Cir. 2003);  <u>Murphy v. Timberlane Reg'l Sch. Dist.</u>, 22 F.3d. 1186, 1192-94 (1st Cir. 1994).  But for contravening federal law, a Section 722 "civil action" for review of an administrative decision would logically

be subject to the 30-day limitation period applicable to state review of agency action under Rule 80C of the Maine Rules of Civil Procedure.  See 5 M.R.S. § 11002(3);  see also Johnson v. Rehab. Servs., No. 1:10-cv-554, 2011 U.S. Dist. Lexis 80660, *6-7, 2011 WL 3102564, *2 (S.D. Ohio July 22, 2011) (Beckwith, J.) (applying 15-day limitation based on Ohio limitation on appeals from administrative actions);  Whitehead v. Ohio Rehab. Servs. Comm'n, No. 1:09-cv-2443, 2010 U.S. Dist. Lexis 81500, *8, 2010 WL 3122831, *3 (N.D. Ohio Aug. 9, 2010) (Boyko, J.) (same);  Carrigan v. New York State Educ. Dept., 485 F. Supp. 2d 131, 136 (N.D.N.Y. 2007) (applying four-month statute of limitations to a challenge of denial of vocational services based on New York's limitation for judicial review of agency decisions). However, federal law appears contrary to this outcome.

 In 1990, Congress enacted a catchall federal limitations statute applicable to "civil action[s] arising under an Act of Congress enacted after" December 1, 1990.  28 U.S.C. § 1658(a);  City of Rancho Palos Verdes v. Abrams, 544 U.S. 113, 123 n.5 (2005).  The civil action provision found in Section 722(c) of the Rehabilitation Act did not come into being until 1998, subsequent to passage of 28 U.S.C. § 1658.  Consequently, Plaintiff has four years in which to pursue a civil action under Section 722(c).  28 U.S.C. § 1658(a);  Rance v. Fla. Dep't of Educ., No. 09-81098-CIV-MARRA, 2011 U.S. Dist. Lexis 29329, *18-19, 2011 WL 1099262, *6 (S.D. Fla. Mar. 22, 2011) (applying 28 U.S.C. § 1658 as a four-year "catchall" limitation rather than Florida's 30-day limitation on petitions for review of administrative decisions); compare Providence Sch. Dep't v. Ana C., 108 F.3d 1, 1 n.1 (1st Cir. 1997) ("Because the enactment of the IDEA preceded the enactment of 28 U.S.C. § 1658, the IDEA is unaffected by that establishment of a four year statute of limitations for all federal causes of action lacking a specific limitations period.");  see also Lakshman v. Univ. of Me. Sys., 328 F. Supp. 2d 92, 110

(D. Me. 2004) (applying four-year period of 28 U.S.C. § 1658 to claim "made possible by the 1991 amendments to § 1981").

In my view, the administrative decision is not entitled to preclusive effect at this moment because Plaintiff still has an opportunity to pursue a Section 722(c) civil action if he requests, and the Court grants him leave, to amend his complaint to state that claim.  If Plaintiff does not request such leave, or if the Court does not grant him leave to amend, then a *res judicata* analysis would unfold, but based on the fact that the Court's judgment *in this action* will have *res judicata* effect on any subsequent proceeding for review of the administrative decision under Section 722.  Plaintiff may request leave to amend his complaint to include a claim under Section 722(c).  If he does, the Court will determine whether to grant him leave to do so, after having the Defendant's position regarding the applicability of 28 U.S.C. § 1658(a), an issue not directly addressed in the current briefing.  In some circumstances, if it appears that a *pro se* litigant might be able to plead adequate facts if he or she better understood the applicable law, the Court may provide some opportunity to understand what the law requires, along with an opportunity to amend the pleadings, all in order to avoid a scenario in which a *pro se* plaintiff's claims are summarily dismissed with prejudice without any review of the merits.  Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 20 (1st Cir. 2004);  Cote v. Maloney, 152 Fed. Appx. 6, 8 (1st Cir. 2005) (unpublished).

### 2.   *Failure to exhaust administrative remedies*

Defendant additionally argues that Plaintiff has failed to exhaust administrative remedies. I agree with Defendant's argument that the specific nature of this dispute about the services provided to Plaintiff in a vocational rehabilitation program is subject to an exhaustion requirement because it arises directly under the Rehabilitation Act and concerns "determinations

made by personnel of the designated State unit that affect the provision of vocational

rehabilitation services to applicants or eligible individuals." 29 U.S.C. § 722(c)(1). Plaintiff's

complaint concerns "the provision of vocational rehabilitation services" and, therefore, Section

722's procedural scheme calls for exhaustion of administrative remedies prior to the

commencement of a civil action under Section 722(c).[3] In this case, the only claim that Plaintiff

administratively exhausted is his claim over the requested commuter subsidy. Plaintiff's other

claims are not properly before the Court. To the extent of these other claims, the Court should

dismiss count III for failure to exhaust administrative remedies.

### 3.     *Failure to state a claim*

Defendant separately argues that Plaintiff's complaint fails to state a claim under Title II

of the ADA, Section 504 of the Rehabilitation Act, or the Maine Human Rights Act. (Mot. at

10-11.) Such claims require proof that the plaintiff was "either excluded from participation in or

denied the benefits of some public entity's services, programs, or activities or was otherwise

discriminated against" by reason of disability. Buchanan v. Maine, 469 F.3d 158, 170-71 (1st.

Cir. 2006) (quoting Parker v. Universidad de Puerto Rico, 225 F.3d 1, 5 (1st Cir. 2000)).[4] Viable

claims are claims of exclusion from participation and denial of benefits, not merely claims that

services do not rise to a certain level or standard. Id. at 174-75. Such claims can include claims

for the failure to make "'reasonable modifications to rules, policies, or practices' to ensure that

---

[3]         The procedural provisions found in Section 722(c) were added to the Rehabilitation Act pursuant to the
Workforce Investment Act of 1998, 105 P.L. 220 (Aug. 7, 1998). Prior to the effective date of the Workforce
Investment Act, the Second Circuit had held that there was no exhaustion requirement for claims related to
vocational rehabilitation services, but that decision was rendered in the absence of the current statutory language.
Doe v. Pfrommer, 148 F.3d 73, 78 (2d Cir. 1998) (basing the decision on federal common law related to claims
brought under 42 U.S.C. § 1983).

[4]         The Rehabilitation Act provides: "No otherwise qualified individual with a disability . . . shall, solely by
reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to
discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. Title II of
the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from
participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to
discrimination by any such entity." 42 U.S.C. § 12132.

disabled students are able to participate in the educational program," Toledo v. Sanchez, 454 F.3d 24, 39 (1st Cir. 2006) (citing 42 U.S.C. § 12131(2)), but, ultimately, to prevail in this context "a plaintiff must make an additional showing that the denial resulted from disability-based animus." D.B. v. Esposito, 675 F.3d 26, 40 (1st Cir. 2012) (discussing Rehabilitation Act and ADA discrimination claims made in the context of an alleged denial of a free appropriate public education under the Individuals with Disabilities Education Act).

Here, Plaintiff's allegations reflect that Plaintiff was not actually excluded or denied participation in Defendant's vocational rehabilitation program by reason of his disabilities. Plaintiff finds Defendant's program to be of insufficient utility, but he is eligible and participates in it by reason of his disability. Plaintiff has failed to articulate how he was excluded from a service or denied a benefit that was provided to non-disabled participants. Defendant offers a vocational rehabilitation program designed to serve disabled individuals, not the general public. Plaintiff is complaining about the level of service provided in this program, not about exclusion from, or denial of the benefit of, a program that is open to the general public.[5] In this context, his discrimination claim requires a plausible allegation that a service was withheld based on disability-based animus, but Plaintiff's complaint does not provide anything more than a conclusory allegation that the denial of requested services arose on account of disability-based animus. For these reasons, Plaintiff fails to allege a valid claim under Title II of the ADA or Section 504 of the Rehabilitation Act.[6]

---

[5]     The Job Corps program is not restricted to disabled persons, but Defendant does not administer the Job Corps program.

[6]     It is important to note that proof of animus is not always an element of a claim brought under Title II of the ADA or Section 504 of the Rehabilitation Act, where access to public services or facilities is the issue. See Iverson v. City of Boston, 452 F.3d 94, 103 (1st Cir. 2006); Ability Ctr. of Greater Toledo v. City of Sandusky, 385 F.3d 901, 910 (6th Cir. 2004). Here, however, Plaintiff asserts "discrimination" claims rather than access claims, which follows from the fact that Defendant does not administer the Job Corps culinary arts program, but rather provides vocational rehabilitation services to disabled persons. Nevertheless, should the Court conclude that animus has no part in the analysis of Plaintiff's discrimination claims under these statutes, and that the denial of a requested service

####    4.    *The Eleventh Amendment*

Defendant also maintains that Plaintiff's claim under Title II of the ADA for money damages is barred by the Eleventh Amendment because the ADA does not contain an explicit waiver of sovereign immunity.  Defendant also argues that Plaintiff's claim under the Maine Human Rights Act cannot proceed in federal court because Maine has not agreed to be sued in federal court on such claims.  (Mot. at 11-13.)  I find Defendant's Eleventh Amendment argument persuasive, even as to Plaintiff's request for prospective injunctive relief.  "To ensure the enforcement of federal law, . . . the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law.  This standard allows courts to order prospective relief, as well as measures ancillary to appropriate prospective relief." Frew v. Hawkins, 540 U.S. 431 (2004) (applying the doctrine of Ex Parte Young, 209 U.S. 123 (1908)).  However, Plaintiff's complaint names only the Department of Labor, not any individuals, so the Eleventh Amendment bar applies across the board, see Irizarry-Mora v. Univ. of P.R., 647 F.3d 9, 11 n.1 (1st Cir. 2011), unless there is a valid abrogation by Congress or waiver by the State of Maine.

The Eleventh Amendment provides that federal courts do not have judicial power over "any suit in law or equity, commenced or prosecuted" against a state.  Tennessee v. Lane, 541 U.S. 509, 517 (2004) (describing the meaning of U.S. Const. amend. XI).  But, "Congress may abrogate the States' Eleventh Amendment immunity," if it both "unequivocally expresse[s] its intent to abrogate that immunity" and "act[s] pursuant to a valid grant of constitutional authority."  Id.  See also United States v. Georgia, 546 U.S. 151, 159 (2006) ("[I]nsofar as Title II creates a private cause of action for damages against the States for conduct that *actually*

---

is actionable under Title II of the ADA or Section 504 of the Rehabilitation Act, the animus concept still informs the Eleventh Amendment question related to Plaintiff's ADA claim, as discussed in the next section of the discussion.

violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."). Congress has satisfied the first requirement in the language of the ADA.  Id. at 518 (citing 42 U.S.C. § 12202).  However, according to the Supreme Court, whether Congress, in passing Title II, has acted pursuant to a valid grant of constitutional authority depends on whether the enactment was fashioned to enforce the substantive guarantees of the Fourteenth Amendment. Id. at 519-20.  In this case, which does not involve Due Process, the question is whether Title II would enforce the guarantees of the Equal Protection Clause.  That objective, in essence, is to ensure that "all persons similarly situated should be treated alike."  Id. at 522 (quoting Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)).

For example, the Supreme Court has held that Title I of the ADA, which prohibits disability discrimination in employment, was not designed to remedy a pattern of unconstitutional discrimination in public employment, so that state immunity under the Eleventh Amendment is not abrogated as to Title I claims.  Id. at 521-22 (discussing Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 368, 374 (2001)).  On the other hand, it has also held that Eleventh Amendment immunity is waived for Title II claims implicating the due process right to access state courts and judicial services, the precise concern addressed in Lane.  Id. at 528-31. Neither case answers the instant question.

The task for federal courts considering Eleventh Amendment challenges to Title II, ADA claims is to determine, "on a claim-by-claim basis, (1) which aspects of the state's alleged conduct violated Title II;  (2) to what extent such misconduct also violated the Fourteenth Amendment;  and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid."  United States v. Georgia, 546 U.S. 151, 159 (2006).

As to the first two questions posed by the Supreme Court in <u>United States v. Georgia</u>, for the reasons stated above on the issue of whether Plaintiff states a claim under Title II, I conclude that the State's alleged conduct has not violated either Title II or the Equal Protection Clause.  As to the third question posed by the Supreme Court in <u>United States v. Georgia</u>, the vocational rehabilitation program that is at issue in this action provides affirmative assistance to disabled persons to facilitate their entry into the workforce.  I am unaware of any congressional history suggesting that Title II was enacted to remediate historical wrongs perpetrated by the States in the actual provision of special services to meet the vocational aspirations of the disabled as a class.  Because Defendant's decisions about the level of vocational rehabilitation services to provide to disabled persons are not a "class of conduct" that historically threatened a violation of the Equal Protection Clause, Congress lacks power under section 5 of the Fourteenth Amendment to abrogate Eleventh Amendment immunity.

In <u>Toledo v. Sanchez</u>, the First Circuit held that a Title II claim should go forward where a university student complained of the university's failure to accommodate his mental disability and its tolerance of a professor's ridicule and poor evaluations, resulting in a failing grade, academic probation, and departure from the program.  454 F.3d 24, 30 (1st Cir. 2006).  In its discussion of whether the plaintiff stated a claim under Title II, the Court noted the plaintiff's allegation that he failed a course due to discriminatory animus, or a failure to accommodate, and that he was unable to fulfill the requirements of his courses because he received no additional time to complete his work.  <u>Id.</u> at 32.  Here, by comparison, the only accommodation that Plaintiff describes with any particularity at all, is a request for a commuter subsidy, while also alleging that he "is in good standing," has received "above average ratings in all areas," and "has faithfully attended and materially participated in all trainings, meetings, and activities."  (Compl.

¶ 35.)  Although Plaintiff does allege a disruption in participation due to a kitchen injury that allegedly was due to a failure to accommodate (id. ¶ 32), he offers no description whatsoever what the requested safety accommodation was.  There simply is no basis for the Court to plausibly infer that Defendant has acted in a way designed to bar Plaintiff from participating in, or to deny him access to the benefit of, vocational rehabilitation services.

In connection with the question of whether the allegations fairly suggested a constitutional violation, the Toledo Court stated that the plaintiff "must allege that these decisions were irrational and not motivated by any conceivable legitimate reason."  Id. at 33.  Such an allegation is not found in Plaintiff's complaint in this action.  Nor are there any factual allegations that would invite the necessary inference.  Plaintiff does allege animus on the part of the Defendant, but "mere conclusory allegations of discrimination unsupported by any facts are insufficient for notice pleading purposes."  Id. at 34.  "In order to state a claim for discrimination that violates equal protection, [Plaintiff] must allege that he was intentionally treated differently from others similarly situated and there was no rational basis for the difference in treatment."  Id.  Plaintiff's complaint, however, does not include such an allegation or invite an inference that would satisfy this standard.

The final consideration addressed by the Toledo Court was "whether Congress's abrogation of sovereign immunity as to that class of conduct is valid as a prophylactic measure within Congress's [Fourteenth Amendment,] § 5 power."  Id. (citing United States v. Georgia, 546 U.S. at 159).  However, a court need only consider this question if it concludes that the complaint states a claim under Title II of the ADA.  Id.  In Toledo, the First Circuit held that this test was satisfied in the context of access to public education.  Id. at 37-38.  Most likely, the First Circuit would extend its holding in Toledo to a state's provision of vocational training programs

to the public.  However, Penobscot Job Corps is administered by the United States Department of Labor, not by the Defendant Maine Department of Labor.  To the extent that Defendant offers special services to Plaintiff through its Division for the Blind and Visually Impaired, these services are limited to individuals with his particular disability and are not available to non-disabled members of the general public.[7]  In my view, the rationale of <u>Toledo</u> does not extend to a dispute over the provision of programming designed to provide services to a particular subset of the disabled community.  Cf.  <u>Buchanan v. Maine</u>, 377 F. Supp. 2d 276, 283 (D. Me. 2005) (concluding that Congress did not validly abrogate Eleventh Amendment immunity in relation to a Title II claim over access to public mental health services);  <u>Dunion v. Thomas</u>, 457 F. Supp. 2d 119, 122-23 (D. Conn. 2006) (concluding that a claim of right to receive "facilitated communication" did not describe a Fourteenth Amendment claim, but that a claim of "failure by the defendants to provide any services . . . could constitute a due process violation").[8]

As for the Eleventh Amendment and Plaintiff's claim under the MHRA:  "[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment.  . . . [T]his principle applies as well to state law claims brought into federal court under pendent jurisdiction."  <u>Pennhurst State Sch. and Hosp. v. Halderman</u>, 465 U.S. 89, 121 (1984);  <u>See also</u> <u>Lopez v. Massachusetts</u>, 588 F.3d 69, 73 n.1 (1st Cir. 2009);  <u>Diaz-Fonseca v. Puerto Rico</u>, 451 F.3d 13, 20 (1st Cir. 2006).

---

[7]     For example, Plaintiff's core claim over the alleged entitlement to a commuter subsidy (to have Defendant pay someone to drive Plaintiff to the program from his home) illustrates that he does not seek to obtain a benefit that is offered to non-disabled participants in the Job Corps program.

[8]     Should the Court conclude that Plaintiff has alleged an actionable claim under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, as distinct from a claim under 29 U.S.C. § 722, such a claim can support a plea for money damages, despite the Eleventh Amendment, because Congress has expressly stated, in Title VI, that waiver of state immunity is a condition placed on the receipt of federal funds under the Rehabilitation Act.  42 U.S.C. § 2000d-7(a)(1);  <u>Diaz-Fonseca v. Puerto Rico</u>, 451 F.3d 13, 33 (1st Cir. 2006);  <u>Nieves-Marquez v. Puerto Rico</u>, 353 F.3d 108, 127-28 (1st Cir. 2003).  Note, too, that an award of money damages under the Title VI remedial scheme requires a showing of intentional discrimination.  <u>Nieves-Marquez</u>, 353 F.3d at 126-27 n.20 (citing <u>Alexander v. Sandoval</u>, 532 U.S. 275, 280-81 (2001)).

The Court should dismiss counts I and II on Eleventh Amendment grounds.  The Court should dismiss count I (MHRA) without prejudice because it is a pendent state law claim.

### 5. *__Burford abstention__*

Defendant maintains that Plaintiff's action inappropriately invites federal court interference with a state regulatory system and argues that, however the Court determines the other issues in its motion, it should abstain from exercising subject matter jurisdiction under the abstention doctrine described by the Supreme Court in <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315 (1943).  (Mot. at 13.)  This abstention doctrine applies only in "narrowly circumscribed situations where deference to a state's administrative processes for the determination of complex, policy-laden, state-law issues would serve a significant local interest and would render federal-court review inappropriate."  <u>Chico Serv. Station, Inc. v. SOL P.R. Ltd.</u>, 633 F.3d 20, 30 (1st Cir 2011) (quoting <u>Fragoso v. Lopez</u>, 991 F.2d 878, 882 (1st Cir. 1993) (explaining that the doctrine may apply where there are difficult questions of state law and policy reposed in state administrative agencies and timely and adequate state court review is available)).  As has already been explained, the administrative process that predated this action was a process prescribed by federal rather than state law and the federal law in question affords a civil action without regard to state court review of agency action under Rule 80C of the Maine Rules of Civil Procedure.  It would be an abuse of discretion for the Court to abstain from exercising jurisdiction in this case based on the <u>Burford</u> abstention doctrine.

### CONCLUSION

For reasons stated above, I RECOMMEND that the Court GRANT Defendant's motion to dismiss (ECF No. 7) and dismiss all three counts of Plaintiff's complaint, as presently set forth, as follows:

DISMISS, WITHOUT PREJUDICE, the Maine Human Rights Act claim in count I on Eleventh Amendment grounds; [9]

DISMISS, WITH PREJUDICE, the Americans with Disabilities Act claim in count II on Eleventh Amendment grounds; [10]

DISMISS, WITH PREJUDICE, the Section 504 Rehabilitation Act claim in count III based on failure to state a claim;  and

DENY LEAVE TO AMEND to assert a Section 722(c) claim for any services other than a commuter subsidy because Plaintiff has not yet exhausted administrative remedies in relation to any other dispute over rehabilitation services.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

May 16, 2012                                    /s/ Margaret J. Kravchuk
                                                      U.S. Magistrate Judge

---

[9]      "Dismissals for lack of jurisdiction should generally be without prejudice."  Torres-Fuentes v. Motorambar, Inc., 396 F.3d 474, 475 (1st Cir. 2005).

[10]      This recommended disposition is with prejudice despite the rule stated in note 9, *supra*, because the recommendation is, in effect, that count II is barred by the Eleventh Amendment because the complaint fails to state a claim under Title II of the ADA, a merits determination.  If the Court finds that Plaintiff has stated a claim under Title II of the ADA, then the immunity analysis under the Eleventh Amendment would have to be reconsidered, but should stand on the separate ground that Congress did not validly abrogate state immunity with respect to the kind of claims pressed here.  In that case, however, count II should be dismissed without prejudice.